Filed 8/15/23  P. v. Glasgow CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B323924 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA117358) |
| v. | |
| CHRISTOPHER GLASGOW, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, and Christopher Glasgow, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# INTRODUCTION

In 2011, defendant Christopher Glasgow was convicted after a jury trial of first degree murder. His conviction was affirmed on direct appeal. In 2022, Glasgow filed a petition for resentencing of his conviction for murder pursuant to Penal Code section 1170.95 (now 1172.6).[1] The trial court summarily denied the petition. On appeal, appellate counsel filed a brief that summarized the procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Glasgow submitted his own letter brief and requested that this court address an issue. We address Glasgow's issue and affirm the order.

# PROCEDURAL BACKGROUND

A. *Information*

On April 28, 2011, an information was filed in the Los Angeles County Superior Court charging Glasgow with murder (§ 187, subd. (a), count 1), which included several firearm allegations (§ 12022.53, subds. (b)-(d)). Glasgow was also charged with unlawful possession of a firearm. (§ 12021, subd. (a)(1), count 2.) As to both counts, it was further alleged that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) It was further alleged Glasgow suffered two prior serious felonies (§ 667, subd. (a)(1)), two prior prison terms (§ 667.5, subd. (b)), and two prior felony

---

[1] All further statutory citations are to the Penal Code unless otherwise stated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). For ease of reference, we will refer to the section by its new numbering only.

convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

B.   *Jury Instructions*[2]

The following relevant instructions were given at the jury trial for Glasgow.

CALCRIM No. 400, aiding and abetting, stated:  "A person may be guilty of a crime in two ways.  One, he may have directly committed the crime.  I will call that person the perpetrator.  Two, he may have aided and abetted a perpetrator, who directly committed the crime.  [¶]  A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator.  [¶]  Those who aid and abet a crime and those who directly perpetrate the crime are principals and *equally guilty* of the commission of that crime."  (Italics added.)

The court also gave CALCRIM No. 401 on aiding and abetting:  "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:  [¶]  1.  The perpetrator committed the crime;  [¶]  2.  The defendant knew that the perpetrator intended to commit the crime;  [¶]  3.  Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;  [¶]  AND  [¶]  4.  The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.  [¶]  Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

---

[2]     Glasgow attached the jury instructions in support of his petition for resentencing, and the People attached the same in support of its opposition.

As to murder, the jury received CALCRIM No. 520, which instructed the jury that to prove defendant was guilty of the offense, the People must prove "[t]he defendant committed an act that caused the death of another person; [¶] AND [¶] [w]hen the defendant acted, he had a state of mind called malice aforethought." CALCRIM No. 521 stated that there are two kinds of malice aforethought, "express malice and implied malice."

The jury was not instructed on the felony murder, the natural and probable consequences doctrine, or any theories of imputed malice.[3]

C.    *Verdict and Sentence*

On August 23, 2011, the jury found Glasgow guilty of first degree murder and unlawful possession of a firearm. (§§ 187, subd. (a), 12021, subd. (a).) It also found true the allegation that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The jury found true that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (b)-(e)(1)) but found not true the allegation that Glasgow personally and intentionally discharged a firearm (§ 12022.53, subds. (b)-(d)).

On September 21, 2011, in a bifurcated trial, the court found true the allegations that Glasgow suffered two prior serious felony convictions (§ 667, subd. (a)(1)), two prior prison terms (§ 667.5, subd. (b)), and two prior felony convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-

---

[3]    CALCRIM No. 520 included the phrase "natural and probable" consequences in its definition of implied malice. It is settled CALCRIM No. 520's definition of implied malice is not the same as the natural and probable consequences doctrine or imputed malice addressed in Senate Bill Nos. 1437 (2017–2018 Reg. Sess.) and 775 (2020–2021 Reg. Sess.). (*People v. Schell* (2022) 84 Cal.App.5th 437, 444.)

(i), 1170.12, subds. (a)-(d)).  That day, the court sentenced Glasgow to state prison for 131 years to life.

D.    *Direct Appeal*

On May 14, 2013, this court filed a nonpublished opinion affirming Glasgow's convictions but remanded to correct the abstract of judgment to properly reflect his actual presentence custody credit.  (*People v. Glasgow* (B236189).)

E.    *Petition for Resentencing*

Thereafter, our Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.).  In short, Senate Bill No. 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder.  (See generally *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  The Legislature then passed Senate Bill No. 775 (2020–2021 Reg. Sess.) to expand relief to people convicted of attempted murder and to provide that a defendant convicted under a now-invalid theory of murder or attempted murder can seek relief on direct appeal.  Senate Bill No. 775 also eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime.

On January 24, 2022, Glasgow filed, in pro. per., a petition for resentencing.  In the petition, Glasgow contended he was convicted of murder under an imputed malice theory as the jury was instructed with CALCRIM Nos. 400, 401, and 520.  Glasgow requested the appointment of counsel.

On March 2, 2022, the court appointed Glasgow counsel.

On July 8, 2022, the People filed a response to Glasgow's petition for resentencing. The People argued the jury was not instructed on felony murder, natural and probable consequences or any other theory of culpability that imputed malice to Glasgow. Rather, he was prosecuted as a perpetrator who committed murder with actual malice and therefore was not entitled to relief. In reply, Glasgow contended that the "equally guilty" language in CALCRIM No. 400 allowed the jury to convict him under a theory of imputed malice.

On August 19, 2022, the trial court summarily denied the petition, reasoning that the jury was not instructed on felony murder, the natural and probable consequences theory, or any theory that would impute malice.

Glasgow filed a timely notice of appeal.

## DISCUSSION

A. *Governing Law*

As noted, Senate Bill No. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.) Senate Bill No. 775 modified the law to "expand the authorization to allow a person who was convicted of murder under any theory under which malice is imputed to a person based solely on that person's participation in a crime . . . to apply to have their sentence vacated and be resentenced," and to clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted

6

the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," now codified in section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis, supra,* 11 Cal.5th at pp. 957, 959.) "If [a] petitioner ma[kes] a prima facie showing for relief, the trial court [is] required to issue an order to show cause for an evidentiary hearing." (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891, citing § 1172.6, subd. (c).) In assessing eligibility at the prima facie stage, the court ""takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."" (*Lewis, supra*, 11 Cal.5th at p. 971.) The court may deny the petition, however, if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Id.* at pp. 970–972.)

Where a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981, overruled in part on another ground in *Lewis, supra*, 11 Cal.5th at pp. 962–970.)

B. *Analysis*

In his letter brief, Glasgow argues the trial court erred in denying his petition for resentencing because the jury was instructed on aiding and abetting with CALCRIM No. 400. Glasgow contends the "equally guilty" language in the instruction suggested the jurors could convict him of murder without finding he had the requisite intent to kill. We disagree.

7

CALCRIM No. 400 provided in part: "Those who aid and abet a crime and those who directly perpetrate the crime are principals and *equally guilty* of the commission of that crime." (Italics added.) However, the possibility that Glasgow could have been convicted at trial under an imputed malice theory was foreclosed by the trial court's additional instruction on aiding and abetting, CALCRIM No. 401. That instruction, as previously stated, explained that an aider and abettor had to know the perpetrator's unlawful purpose, intend to encourage or facilitate the commission of the crime, and by act or advice, aid and encourage the commission of the crime. Where, as here, the trial court instructs the jury with CALCRIM No. 401, there is no reasonable likelihood the jurors would have understood the equally guilty language in CALCRIM No. 400 to allow them to base Glasgow's liability for first degree murder on the mental state of the actual shooter, rather than on his own mental state in aiding and abetting the killing. (*People v. Johnson* (2016) 62 Cal.4th 600, 641; see *id.* at pp. 640–641 [because the trial court "instructed the jury with CALCRIM No. 401, which sets out the requirements for establishing aider and abettor liability," the jury "was informed that for them to find defendant guilty of murder as an aider and abettor the prosecution must prove that [the] defendant knew [the perpetrator] intended to kill [the victim], that he intended to aid and abet [the perpetrator] in committing the killing, and that he did in fact aid him in that killing, which would have cleared up any ambiguity arguably presented by CALCRIM former No. 400's reference to principals being 'equally guilty'"].)

Thus, Glasgow is ineligible for resentencing as a matter of law because he was not convicted of murder under a now-invalid theory.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.